

# COURT OF APPEALS

**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 02-13-00254-CV

IN THE INTEREST OF M.P., A.P.
AND T.P., CHILDREN

------------

FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

Appellant K.B. (Father) appeals the trial court's order terminating his parental rights to his children, M.P., A.P., and T.P. We will affirm.

M.P. was born in March 2000, A.P. was born in June 2001, and T.P. was born in June 2002. Their mother is J.B. (Mother), Father's wife.

In May 2012, Appellee Texas Department of Family and Protective Services (TDFPS) initiated an investigation involving the children after it received referrals that Father and Mother were using drugs—marijuana and

---

[1]*See* Tex. R. App. P. 47.4.

methamphetamine—and that there was a history of domestic violence occurring in the household. Mother told the investigator that she was arrested in March 2012 for possessing methamphetamine and that she blamed Father for the arrest because he had wanted the drugs for his birthday. When confronted with the results of a drug test, Mother admitted that she had recently used methamphetamine with Father. Mother also told the investigator that Father had broken her shoulder during an act of domestic violence in 2010 and that she had a protective order entered against him. Father admitted that he had smoked marijuana in March 2012, but he claimed that he had not used methamphetamine for five or six years and that his drug test was positive because he had been working with pool chemicals. TDFPS found reason to believe neglectful supervision of the children by both Father and Mother, due to the evidence of substance abuse, but it did not remove the children. Instead, it offered Mother and Father various family-based safety services.

TDFPS initiated another investigation several months later, in early August 2012, after law enforcement authorities executed a search warrant for narcotics at Mother and Father's residence. Officers found several baggies of marijuana and a device used to extract THC from marijuana, and a TDFPS investigator who arrived at the house after the search observed "a lot" of bongs. Father had left the house through a rear exit when the police arrived—to avoid being arrested for violating the protective order—and Mother expressed frustration that she was "getting in trouble [because of Father] again." Mother told the investigator that

she began using methamphetamines when she was twenty-one years old (she was born in 1978), that Father had introduced her to the drug (he was born in 1977), that she had last used it on July 31, 2012, and that she had been the victim of physical and verbal domestic violence—caused by Father—for the last twelve years. TDFPS removed the children and found reason to believe neglectful supervision of the children by Mother and Father.

On August 2, 2012, TDFPS filed its petition for protection, conservatorship, and termination in suit affecting the parent-child relationship. Father and Mother each had a service plan, but neither completed it, and Father admitted using methamphetamines or marijuana on a number of occasions during the pendency of the suit. After a final bench trial in July 2013, the trial court terminated Father's parental rights to the children, finding by clear and convincing evidence (1) that he had knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered their physical or emotional well-being; (2) that he had engaged in conduct, or knowingly placed the children with persons who engaged in conduct, that endangered the children's physical or emotional well-being; and (3) that termination of his parental rights to the children is in the children's best interests.[2]

In a single issue, Father argues that the evidence is legally and factually insufficient to support the trial court's best interest finding because while the

---

[2]The trial court made similar findings as to Mother and terminated her parental rights to the children. Mother did not appeal.

3

children "thrived in the family home"—they were good students and had no history of disciplinary problems—their "lives took a turn for the worse" after being removed from the home because, among other things, their grades suffered and they experienced disciplinary problems.

Termination decisions must be supported by clear and convincing evidence. Tex. Fam. Code Ann. § 161.001 (West Supp. 2013), § 161.206(a) (West 2008); *In re E.N.C.*, 384 S.W.3d 796, 802 (Tex. 2012). Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007 (West 2008); *E.N.C.*, 384 S.W.3d at 802.

In evaluating the evidence for legal sufficiency in parental termination cases, we determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction that termination of the parent-child relationship would be in the best interest of the child. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). In reviewing the evidence for factual sufficiency, we determine whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that termination of the parent-child relationship would be in the best interest of the child. Tex. Fam. Code Ann. § 161.001(2); *see In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006).

There is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). Nonexclusive factors that the trier of fact in a termination case may use in determining the best

4

interest of the child include the desires of the child, the emotional and physical needs of the child now and in the future, the emotional and physical danger to the child now and in the future, the parental abilities of the individuals seeking custody, the programs available to assist these individuals to promote the best interest of the child, the stability of the home or proposed placement, and the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (citations omitted); *see E.N.C.*, 384 S.W.3d at 807.

Father is correct that the children experienced some difficulty transitioning to life outside of the family home. Early in the case, they were placed with their paternal grandmother, a licensed foster parent. TDFPS subsequently removed the oldest child from that placement because of conflicts between her and the grandmother and because of "ongoing issues between her and her brother arguing all the time." At the time of trial, the oldest child was in respite care and had a marijuana case and an assault case pending.[3] The other two children were also in respite care. Father testified that since the removal, the children's grades had fallen and that he had observed some negative changes in their behavior. The grandmother notified TDFPS before trial that she would not be considered a long-term placement for the children, and a CASA worker testified that the two younger children preferred to be returned to their parents.

---

[3]Respite care provides a temporary placement for a child.

5

Although this evidence reveals that the children struggled to a certain extent after being removed from the home, it is only part of the evidence that the trial court could have considered in resolving the best interest inquiry. The relevant evidence additionally shows that Father has a history of domestic violence—he has convictions for violating a protective order, assault-bodily injury, and assault by contact.[4] Father broke Mother's shoulder during a confrontation with her in 2010, which the oldest child witnessed, and in another incident with Mother, he destroyed all of the windows in their trailer. Mother told an investigator that she had been the victim of physical and verbal domestic violence for the past twelve years.

The trial court also heard a substantial amount of testimony about a consideration that undoubtedly weighed heavily in favor of the best interest finding: Father's sustained illegal drug use. Father tested positive for drugs when TDFPS first became involved with the family in May 2012; he told the caseworker that he had been using drugs before the police executed the search warrant in early August 2012; and he used drugs (methamphetamine or marijuana) during the pendency of the case—in October 2012, November 2012, December 2012, February 2013, June 2013, and as recently as a week or two before the final trial. Father admitted that he had been addicted to drugs for "20 plus years" and that he smoked marijuana in front of the children, and the record

---

[4]Father also has a conviction for burglary of a building.

seemed to indicate that Father had contributed to Mother's problems with illegal drugs. Although he attended several drug counseling sessions before trial, Father had not fully taken advantage of the services provided to him during the case. The record thus demonstrates that Father has engaged in a continuing course of illegal drug use and that he has made little attempt to alter that conduct.

The caseworker opined that a parent has to be drug free to appropriately care for and supervise his or her children but that Father had not demonstrated that he could do that. Along those lines, the caseworker concluded that Father could not meet the emotional and physical needs of the children because he had not "remained sober to be able to properly supervise his children and care for them." She consequently opined that it was in the best interest of the children for Father's parental rights to be terminated. Indeed, although it was apparent that he loves his children, Father acknowledged that he could not successfully parent the children while he was addicted to methamphetamine.

Father argues that there was no or insufficient evidence "that the open use of marijuana by the parents and their occasional surreptitious use of methamphetamines was in any way deleterious to the children's well being," but it is well established that illegal drug use by a parent supports a conclusion that the child's surroundings endanger his or her physical or emotional well-being and that such evidence, which supports the trial court's subsection 161.001(1)(D) and (E) findings, can be probative of the trial court's best interest finding. *See In re*

7

*C.H.*, 89 S.W.3d 17, 28 (Tex. 2002); *In re R.A.E.*, No. 02-10-00121-CV, 2011 WL 582723, at *8 (Tex. App.—Fort Worth Feb. 17, 2011, no pet.) (mem. op.).

Accordingly, giving due consideration to evidence that the trial court could have reasonably found to be clear and convincing, we hold that the trial court could have reasonably formed a firm belief or conviction that termination of Father's parental rights to the children is in the children's best interest. The evidence is thus legally and factually sufficient to support the trial court's section 161.001(2) best interest finding. *See* Tex. Fam. Code Ann. § 161.001(2). We overrule Father's only issue and affirm the trial court's judgment.

BILL MEIER
JUSTICE

PANEL: GARDNER, WALKER, and MEIER, JJ.

DELIVERED: January 9, 2014